Fecteau, J.
The plaintiff, Szymas Lechoslaw (“Lechoslaw”) filed an eight-count complaint against Fleet Bank (“Fleet”), Citibank N.A. and Bank Handlowy (“the Bank”). The complaint asserts claims of negligence, breach of contract, intentional infliction of emotional distress and violations of G.L.c. 93A. The matter is before the court on the Bank’s motion to dismiss for lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2). For the following reasons, the Bank’s motion is allowed.
BACKGROUND
Lechoslaw’s claims against the Bank arise from the collection of an Official Check[2] in the amount of $31,787.34 that he bought at a Fleet branch in Worcester, Massachusetts in July 2000 and presented to the Bank in Poland for collection in October 2000. At that time, Lechoslaw had mailing addresses in both Worcester and Poznan, Poland. The Bank has its head office in Warsaw, Poland, and maintains twenty-seven branch offices across Poland. It does not have an office in Massachusetts or anywhere else in the United States. At the time this transaction took place, the Bank was doing business as Citibank Poland.
In the summer of 2000, Lechoslaw was in the process of developing a motel and restaurant in Poznan. On July 28, 2000, he purchased an Official Check from a Fleet branch in Worcester, and on October 4, 2000, he presented the check for collection and payment at the Bank’s Poznan office. The Bank then forwarded the check via the Polish mail system to Fleet in New Jersey for collection. Between October 4, 2000 and early December 2000, Lechoslaw visited the Bank’s Poznan branch office frequently to check on the status of the check.
In early December, the Bank contacted the Fleet office in New Jersey to determine the whereabouts of the check. After much communication between the two banks via email, facsimile, and telephone, Fleet informed the Bank that it had no record of the check. The Bank then provided Fleet with a certified and indemnified copy of the check and, on or about February 4, 2000, Fleet paid the amount of the check to Citibank, N.A., which then forwarded payment to the Bank in Poland. The bank credited Lechoslaw’s account the full amount on February 4, 2000. Prior to this, on or about December 1, 2000, the contractor for Lechoslaw’s project terminated the contract due to Lechoslaw’s failure to pay or provide required materials.
DISCUSSION
Lechoslaw argues that he lost profits since he was prevented from constructing the development due to lack of funds resulting from the delay in collecting from the Bank. The initial complaint alleges damages of $31,787.34. In June 2004, Lechoslaw filed an amended complaint. Although the amended complaint does not include a specific sum for damages, a revised 93A letter alleges damages of $890,000. He has initiated this cause of action in Massachusetts and seeks to exert personal jurisdiction over the Bank. The Bank argues that Lechoslaw has not met his burden of proving that it meets either the statutoiy or constitutional requirements for the assertion of personal jurisdiction.
Lechoslaw claims that the Bank has waived personal jurisdiction. He further contends that the Bank transacted business in Massachusetts and personal jurisdiction can be asserted under the Massachusetts long-arm statute, G.L.c. 233A, §3. Lechoslaw also argues that since the Bank was doing business as Citibank Poland at the time of the transaction, it was part of a corporation soliciting business throughout the world, and therefore satisfied the constitutional requirements for the exercise of personal jurisdiction in Massachusetts.
A. WAIVER OF PERSONAL JURISDICTION
Lechoslaw claims that the Bank has waived personal jurisdiction in this court by submission through conduct. This was done, he contends, by making discovery requests (requests for documents and interrogatories), soliciting a confidentiality agreement as required under Polish law, negotiating extensions of time, and preparing and filing an assented to motion with the court. The Bank argues that since it raised the affirmative defense of lack of personal jurisdiction in its answer to the complaint, it has not been waived this defense.
*530 Generally, the defense of lack of personal jurisdiction must be raised in the defendant’s initial response, either by motion or by answer, or it is waived. Mass.R.Civ.P. 12(g), (h). Colley v. Benson, Young, & Downs Ins. Agency, 42 Mass.App.Ct. 527, 533 (1997). If, however, a party makes voluntary appearances and contests the case at all stages until judgment is rendered, such conduct gives jurisdiction. Ingersoll v. Ingersoll, 348 Mass. 209, 211 (1964); see also Vangel v. Martin, 45 Mass.App.Ct. 76, 78-79 (1998) (finding that by filing an appearance, opposing numerous requests of temporary orders by the plaintiff, filing a motion for temporary orders, and conducting discovery, the defendant, who had not previously raised the defense of lack of personal jurisdiction, had waived the defense).
In Sarin v. Ochsner, the Massachusetts Appeals Court found that, even if lack of personal jurisdiction was raised in an answer, active participation in the proceedings amounted to a waiver of that defense. 48 Mass.App.Ct. 421, 422-23 (2000). In that case, the defendants appeared twice at hearings on damages following a 1995 default judgment for the plaintiff. Id. at 422. After the hearings, judgment entered for the plaintiff. Id. When one of the defendants who had been considered judgment proof acquired assets three years later, the plaintiff initiated an action to enforce the 1995 judgment. Id. The court found that the defendants had actively participated in the proceedings by appearing for two hearings, filing motions to disqualify counsel, to stay discovery, and to remove the default. Id. at 423. The court found that this participation coupled with the fact that the defense of lack of personal jurisdiction had not been asserted in any motions or brought to the court’s attention before the entry of the 1995 judgment amounted to a waiver of that defense. Id.
The question before this court, therefore, is whether the Bank participated in the proceedings sufficiently to constitute a waiver of lack of personal jurisdiction even though it was raised in the Bank’s answer. Both parties requested discovery. In February 2004 and May 2004 the Bank served two sets of interrogatories and two requests for documents. In March 2004, April 2004, and June 2004 the Bank negotiated three extensions of time to respond to the plaintiffs discovery requests. Lechoslaw served an amended complaint on May 28, 2004, and the Bank served its motion to dismiss on July 14, 2004. Although the Bank did request some discovery, it never participated in any depositions or responded to any discovery requests made by the plaintiff. It appears that the Bank did not participate in the proceedings sufficiently to waive the defense of personal jurisdiction to the same extent as the defendants in Sarin. The Bank did not participate in any hearings, and the only motions it filed were an assented to motion to extend discovery on June 29, 2004, a motion for leave to file a Rule 12 motion late, and the motion to dismiss currently before the court. Therefore, its participation did not rise to the level of participation indicated in Sarin. Furthermore, in both Sarin, and Vangel, the cases had gone to judgment. For these reasons, the Bank has not waived the defense of lack of personal jurisdiction.
B. ASSERTION OF PERSONAL JURISDICTION
The assertion of personal jurisdiction in Massachusetts over a non-resident defendant raises a two-pronged inquiry. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5 (1979). The court must determine first whether the assertion of jurisdiction is authorized by the state’s long-arm statute, G.L.c. 233A, §3, and second, whether, if authorized, jurisdiction is consistent with the due process requirements of the United States Constitution. Id. When a defendant challenges personal jurisdiction in the forum, the burden is on the plaintiff to establish sufficient facts on which to predicate jurisdiction. Id. at 3.
1. Personal Jurisdiction under G.L.c. 233A, §3
Under G.L.c. 233A, §3(a), personal jurisdiction can be asserted if the defendant or its agent transacted any business in the Commonwealth, and if the cause of action arose from that business. Id. at 6. Even if the defendant transacted business in the Commonwealth within the meaning of the statute, there must be a substantial nexus between that business and the cause of action. Schaefer v. Cybergraphic Sys., Inc., 886 F.Sup. 921, 924 (D.Mass. 1994).
Courts have generally construed “transacting any business” broadly. United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992). The test is whether the defendant tried to participate in the economic life of the Commonwealth. Id., see also Hahn v. Vermont Law School, 698 F.2d 48, 51-52 (1st Cir. 1983) (mailing an application, information, and acceptance letter to plaintiff in Massachusetts constituted transacting business). Generally, “the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement.” Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). The defendant’s actions must be deliberate rather than fortuitous, such that he could reasonably foresee the need to invoke the protections and benefits of the forum. Haddad v. Taylor, 32 Mass.App.Ct. 332, 336 (1992).
In the case at bar, the Bank does not transact any business in the Commonwealth within the meaning of G.L.c. 233A, §3. It has its head office in Warsaw, Poland, and all its branches are in Poland. Although it has fourteen individual customers and twenty-five corporate customers that have provided it with their Massachusetts addresses, all customers must open their accounts at a Bank branch in Poland. The Bank does not allow bank accounts to be opened by mail or online. Letters, phone calls, and facsimile communications between a foreign bank and a customer in order for the customer to manage his account from a *531 distance are insufficient to constitute “transacting business.” O’Malley v. Bank of Ireland, 2003 WL 1751815 ***3 (2003 Mass.App.Ct.) (unpublished opinion).[3]
Furthermore, the Bank does not advertise its financial services in Massachusetts or regularly engage in business with Massachusetts banks. It does not own any real property or pay taxes in Massachusetts, and it is not licensed in Massachusetts. Additionally, the Bank does not employ any individuals in Massachusetts. See Reins v. Wilhelm Loh Wetzlar Optical Mach., 26 Mass.App.Ct. 14, 17 n.1 (1988).
Lechoslaw bought the check from Fleet Bank in Massachusetts. He then traveled to Poland where he presented the check to the Bank for collection. The Bank then mailed the check to Fleet in New Jersey for payment. At some point the check disappeared. After much negotiation with Fleet in New Jersey, the Bank submitted a copy of the check for collection and Lechoslaw was paid the full amount on the check. There is no indication that this cause of action arose from any business transaction that the Bank had in Massachusetts within the meaning of G.L.c. 233A, §3. The Bank did not solicit Lechoslaw’s business, and its only contact with Massachusetts was to receive the check from Lechoslaw. Furthermore, it sought collection from and all its correspondence was with Fleet in New Jersey.
Lechoslaw also cannot claim jurisdiction pursuant to G.L.c. §3(d). Under that portion of the statute, a person can assert personal jurisdiction if the injury occurred outside of the Commonwealth if the defendant regularly did business with or engaged in a persistent course of conduct, or derived substantial revenue from goods or services rendered in Massachusetts. Although the Bank has thirty-nine customers in Massachusetts, any business it has with those customers actually takes place in Poland. Furthermore, the transaction between Lechoslaw and the Bank took place in Poland.
Since the Bank did not transact any business in Massachusetts and Lechoslaw’s cause of action did not arise from any business transacted in Massachusetts, Lechoslaw has not met the statutory requirements of G.L.c. 233A, §3.
2. Constitutional Requirements for Personal Jurisdiction
The assertion of personal jurisdiction in this case would offend the due process requirements of the United States. The Due Process Clause of the United States Constitution demands that individuals have “fair warning” that they might be subject to the jurisdiction of another sovereign. Heins, 26 Mass.App.Ct. at 21 (citing Shaffher v. Heitner, 433 U.S. 186, 218 (1977)). The defendant’s conduct and connection with the forum must be such that he could reasonably anticipate being haled into court there. Id. at 23. In order to satisfy the foreseeability requirement, a defendant must have purposefully established minimum contacts with the forum state. Id. at 25 (quoting Burger King Corp. v. Rudwewicz, 471 U.S. 462, 474 (1985)). Furthermore, the assertion of personal jurisdiction must “comport with fair play and substantial justice.” Id. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).
The argument that the Bank has not purposefully established minimum contacts in Massachusetts is discussed supra. It has never advertised or solicited business in Massachusetts, nor maintained any office or had any employees in the Commonwealth. The Bank could not have anticipated that it could be sued in Massachusetts. Furthermore, it would offend traditional notions of fair play to require the Bank to defend Lechoslaw’s suit in Massachusetts. It has not sent representatives to the Commonwealth before and the transactions took place in Poland, where all the witnesses are located. Compare Heins, 26 Mass.App.Ct. at 26 (where the manufacturer had sent representatives to the Commonwealth in the past, the defective machinery was located in Massachusetts, the accident occurred in Massachusetts, and all the witnesses were located in Massachusetts). The assertion of personal jurisdiction over the Bank in Massachusetts does not comport with the constitutional requirements.
3. Corporate Separateness
Lechoslaw contends that, since at the time the transaction took place the Bank was doing business as Citibank Poland, the court should take judicial notice of the fact that Citibank is a large, multinational corporation that solicits business throughout the world. This argument is without merit.
Generally, corporations are regarded as separate from each other and from their respective stockholders. My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618 (1968). Common ownership of stock of two companies together with common management, will not alone be sufficient to conclude an agency or similar relationship. Id. at 619. However, when one corporation exerts control over another, or there is a confused intermingling of activities with a substantial disregard for the separateness of the entities, a court could conclude that one is the agent of the other. Id. Where there is a failure to observe the formal barriers between corporations without a segregation of finances and records, a court could disregard the separateness of the entities. Id.
The doctrine of corporate disregard should only be asserted in those rare occasions when it is necessary to provide a meaningful remedy and to avoid injustice. Att’y Gen. v. M.C.K., Inc., 432 Mass. 546, 431 (2000). While most cases address whether a parent company is liable for the actions of a subsidiary, in Wilson v. Holiday Inn Curacao N.V., the District Court for the District of Massachusetts found that defendant Holi *532 day Inn of Curacao was a separate corporation from Holiday Inns of America, although the former was wholly owned by the latter. 322 F.Sup. 1052, 1054 (D.Mass. 1971). The court found that even though the parent advertised and accepted reservations on behalf of its subsidiary, the defendant Curacao corporation had a legal and corporate entity separate and distinct from its parent and therefore was not subject to the court’s jurisdiction. Id.
In the case at bar, Citigroup, Inc. was an indirect majority shareholder of the Bank. Lechoslaw makes no claim that Citigroup controlled the Bank, nor acted on its behalf here; moreover, there is no attempt to show a confused intermingling of activities between the two with a substantial disregard for their separateness. See My Bread, 353 Mass, at 618. Therefore any actions that Citigroup may have taken in Massachusetts, such as advertising, cannot be attributed to the Bank for purposes of exercising personal jurisdiction.
Since the Bank does not transact any business in Massachusetts and has not purposefully established minimum contacts in Massachusetts, Lechoslaw has not met his burden of proving that the Bank meets either the statutory or constitutional requirements for the exercise of personal jurisdiction.
ORDER
It is therefore ORDERED that the defendant’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2) be ALLOWED.

An official check is similar to a Cashier’s Check or a Treasurer’s Check.

In that case, the Bank of Ireland had negotiated loans for the plaintiff, who lived in Massachusetts. O’Malley, 2003 WL 1751815 at ***1. In deciding that the bank did not transact business in Massachusetts, the court noted that it had not cashed any checks from a Massachusetts bank. Id, at ***3. In the instant case, whether the Bank actually cashed Lechoslaw’s check by sending it to Fleet in New Jersey is arguably an open question. Nevertheless, the court in O'Malley did not find that the act of cashing a check constituted transacting business within the meaning of G.L.c. 233A, §3(a). Id,