NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-1327                                    Appeals Court

RYAN DELLORUSSO  vs.  PNC BANK, N.A.

No. 19-P-1327.

Essex.     May 20, 2020. - July 21, 2020.

Present:  Green, C.J., Maldonado, & Blake, JJ.

Motor Vehicle Installment Sales, Notice, Repossession. Uniform Commercial Code, Notice. Retroactivity of Judicial Holding. Practice, Civil, Retroactivity of judicial holding.

Civil action commenced in the Superior Court Department on October 5, 2018.

A motion to dismiss was heard by C. William Barrett, J.

Nicholas F. Ortiz for the plaintiff.
Patrick T. Voke for the defendant.

BLAKE, J.  This case presents the question whether the holding in Williams v. American Honda Fin. Corp., 479 Mass. 656 (2018), regarding the proper way for a creditor to calculate a consumer's deficiency debt in an automobile repossession notice provided to the consumer, should be given retroactive or

prospective effect. A judge of the Superior Court ruled that the holding in Williams applies prospectively only to notices sent after Williams was decided, and dismissed plaintiff Ryan Dellorusso's complaint. Dellorusso appeals, claiming that the holding in Williams should be given retroactive effect because there are no exceptional circumstances that would justify departure from the presumption of retroactivity. We agree with Dellorusso and vacate the judgment of dismissal.[1]

The Massachusetts Uniform Commercial Code (UCC), G. L. c. 106, §§ 9-600, and the Massachusetts Motor Vehicle Retail Installment Sales Act (RISA), G. L. c. 255B, govern a creditor's repossession and subsequent sale of a car. Both allow a creditor to use self-help to repossess a car that was pledged as collateral for a loan after a qualifying default. See G. L. c. 106, § 9-609; G. L. c. 255B, § 20B (a). Both also provide that a creditor may sell the car so long as the creditor gives timely notice to the debtor of when and how the sale will take place and that advises the creditor of certain rights. See G. L. c. 106, §§ 9-610, 9-611, 9-612, 9-613, 9-614; G. L. c. 255B, § 20B (d). These rights include the right of the

---

[1] In concluding that Williams applies retroactively, we mean that it applies to all cases in which a final judgment has not yet entered, an appeal is pending or the appeal period has not yet expired, or that are commenced after the release of this opinion, regardless of whether the notice was sent before Williams was decided.

debtor to an accounting of the unpaid debt.  G. L. c. 106, § 9-614 (1) (B).  These notice requirements are designed to ensure that the extrajudicial act of repossession is fair and transparent.

The UCC and RISA also contain certain provisions that conflict with each other, however.  The UCC requires a creditor to send a notice that, as relevant here, includes a "description of any liability for a deficiency of the person to which the notification is sent."  G. L. c. 106, § 9-614 (1) (B).  The UCC grants a safe harbor to creditors that use form language stating that "[t]he money that we get from the sale . . . will reduce the amount you owe."  G. L. c. 106, § 9-614 (3).  By contrast, the RISA provides that, after a repossession, the unpaid balance on a loan secured by a car must be reduced by the fair market value of the car, and not the price at which the car sold. G. L. c. 255B, § 20B (e) (1).

The Supreme Judicial Court (SJC) resolved the conflict between these two provisions in Williams.[2]  As noted by the SJC, the RISA contains additional language, which provides that "disposition of the collateral shall be governed by the [UCC]" only if those provisions of the UCC are not "displaced by the

_____

[2] The SJC answered three questions certified to it by the United States Court of Appeals for the First Circuit.  The thrust of the decision centered on the question how to calculate fair market value under G. L. c. 255B, § 20B.

provisions of [G. L. c. 255B, §§ 20A and 20B]." G. L. c. 255B, § 20B (d). Thus, the SJC held that all automobile repossession notices must state that the consumer's deficiency debt will be calculated, in accordance with the RISA, based on the difference between the unpaid balance and the car's fair market value.[3] Williams, 479 Mass. at 668-669. While the UCC's safe harbor provision contains conflicting language, that language is displaced by the RISA. Id. Therefore, any automobile repossession notices required by the UCC that fail to calculate the deficiency debt based on the car's fair market value are legally insufficient. Id.

Here, there is no dispute that Dellorusso was in default on his car loan and that the defendant, PNC Bank, N.A. (PNC), sent Dellorusso a presale repossession notice advising him that the amount he owed would be reduced by "[t]he money that we get from the sale." Under Williams, this was legally insufficient, and PNC does not contend otherwise. Instead, relying primarily on Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569 (2012), PNC contends that Williams should be given only prospective effect and that the dismissal of Dellorusso's complaint was proper. PNC reasons that if Williams is given retroactive effect, the UCC's safe harbor provision would be eviscerated. Dellorusso

---

[3] Both the UCC and RISA provide that a consumer's deficiency debt may be increased by other costs not relevant here.

responds that <u>Williams</u> is entitled to a presumption of retroactivity and that his complaint should not have been dismissed.

Decisions are presumptively given retroactive effect, with prospective effect being given to decisions in "very limited circumstances." <u>Eaton</u>, 462 Mass. at 588. In making the determination whether to give a decision only prospective effect, the SJC (as the court making the ruling) "consider[s] the extent to which a decision creates a novel rule, whether retroactive application will serve the purposes of that rule, and whether hardship or inequity would result from retroactive application." <u>American Int'l Ins. Co</u>. v. <u>Robert Seuffer GMBH & Co</u>., 468 Mass. 109, 120-121, cert. denied, 574 U.S. 1061 (2014). Where a decision does not create a novel rule "but rather construes a statute, no analysis of retroactive or prospective effect is required because at issue is the meaning of the statute since its enactment."[4] <u>McIntire, petitioner</u>, 458 Mass.

---

[4] PNC points to language indicating that "[w]hen announcing a new common-law rule, <u>a new interpretation of a State statute</u>, or a new rule in the exercise of [the SJC's] superintendence powers, there is no constitutional requirement that the new rule or new interpretation be applied retroactively" (emphasis added). <u>Commonwealth</u> v <u>Dagley</u>, 442 Mass. 713, 721 n.10 (2004), cert. denied, 544 U.S. 930 (2005). As further explained in <u>McIntire, petitioner</u>, 458 Mass. 257, 262 n.7 (2010), cert. denied, 563 U.S. 1012 (2011), "we take the reference to a 'new interpretation of a State statute' as an illustration of [the] point" that, "depending on whether a new rule announced in a

257, 261 (2010), cert. denied, 563 U.S. 1012 (2011).  See

Shawmut Worcester County Bank, N.A. v. Miller, 398 Mass. 273,

281 (1986) (interpretation of UCC definition of debtors did not

announce new common-law rule, but rather construed statutory

provisions).  And, while it is true that in very limited

circumstances a court may determine that a decision construing a

statute should be given only prospective effect, such as in

Eaton where the SJC's interpretation of the statute may have

been difficult to predict, it will typically say so if that is

the case.  See, e.g., Eaton, supra at 587-589.

In Williams, the SJC considered the language of the UCC and

RISA and concluded that the fair market value language set forth

in the RISA displaced the UCC's inconsistent safe harbor

provision.  479 Mass. at 668-669.  Nothing about this

interpretation was a "novel rule."  American Int'l Ins. Co., 468

Mass. at 121.  The RISA clearly provides that the provisions of

G. L. c. 255B, §§ 20A and 20B, displace inconsistent provisions

of the UCC.  G. L. c. 255B, § 20B (d).  See, e.g., American

Int'l Ins. Co., supra (looking to whether parties could have

anticipated decision).  Moreover, where Williams does not

include a retroactive-prospective analysis, we infer that the

SJC concluded that no exceptional circumstances, such as those

case is constitutionally required, principles of retroactivity
operate differently."

present in Eaton, warranted departure from the presumption of retroactivity.[5]  See, e.g., Commonwealth v. Taranovsky, 93 Mass. App. Ct. 399, 402 (2018) (no analysis of retroactive or prospective effect provided where decision construing statute was given retroactive effect).  Contrast Eaton, 462 Mass. at 587-589 (announced holding and considered prospective application in same decision).

Even if we were to conduct a further retroactive-prospective analysis and look to whether retroactive application would serve the purpose of the holding in Williams and whether hardship or inequity would result from retroactive application, those factors would also support retroactive application.  The purpose of the holding in Williams was to give effect to the clear meaning of a statute designed to protect consumers.  That purpose is best accomplished through retroactive application.  Cf. Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 742-748 (2008) (rejecting argument that while terms of subprime loans may have been unfair by current standards, those standards should not have governed conduct at time of loan origination).

---

[5] Nor do we think that any such exceptional circumstances are present here.  While PNC places much emphasis on the fact that this case, like Eaton, involves property law, we have never held that all decisions pertaining to property law must be given only prospective effect.  And, Eaton, 462 Mass. at 578-589, involved concerns regarding the validity of title to real estate not present here.

We are also unpersuaded by PNC's argument that it will be harmed by retroactive application of Williams.  Because the RISA explicitly provides that the provisions of G. L. c. 255B, §§ 20A and 20B, displace inconsistent provisions of the UCC, it was foreseeable that a court would hold that the UCC's safe harbor provision was insufficient in transactions also governed by the RISA.  PNC took a knowing risk in using the UCC's inconsistent safe harbor language instead.[6]  The fact that the SJC could have reached a different conclusion does not alter our analysis.  In any case where there is a statutory ambiguity, those affected by it may be divided as to how to resolve the ambiguity.  The predictable risk associated with these differences of opinion does not warrant deviation from the presumption of retroactivity.  See, e.g., American Int'l Ins. Co., 468 Mass. at 122 (no undue hardship where defendant relied on "plausible but hardly unassailable interpretation" of rule); Dever v. Ward, 92 Mass. App. Ct. 175, 183 (2017) ("retroactive application will not result in specific hardships or inequities" where new rule had been foreshadowed).  Moreover, PNC offers no compelling reason why it should enjoy more favorable treatment in exchange for the risk it took than American Honda Finance Corporation (American Honda), merely because American Honda's case was

_____

[6] The relevant provisions of the RISA were even in effect when Dellorusso obtained financing from PNC in 2017.

decided first; indeed, as we have explained, the ordinary rule is precisely the opposite.[7],[8]

Judgment vacated.

---

[7] We note that, after the SJC released its opinion in Williams, American Honda filed a petition for rehearing in which it specifically asked the Court to make its holding prospective only, and the court denied the petition. We decline Dellorusso's suggestion to treat that denial as a binding conclusion that the holding in that case should have retroactive effect. The denial of a petition for rehearing is not a decision on the merits. See Acme Plastering Co. v. Boston Hous. Auth., 25 Mass. App. Ct. 985, 985 (1988).

[8] Dellorusso's request for appellate attorney's fees is denied.